IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| MARICEL FORTEZA, | § |
| Plaintiff, | § § § |
| V. | §  No. 3:23-cv-874-L-BN |
| VEHICLE SERVICE DEPARTMENT, ET AL. | § § § |
| Defendants. | § § |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE

Plaintiff Maricel Forteza filed this case *pro se* on April 25, 2023, alleging that multiple defendants, including Sing for Service, LLC d/b/a Mepco ("Mepco"), violated the Telephone Consumer Protection Act ("TCPA"), a related federal regulation, and provisions of Texas law. *See* Dkt. No. 3. Forteza also paid the applicable filing fee and thereby assumed the obligation to either properly serve each defendant with a summons and the complaint in compliance with Federal Rule of Civil Procedure 4 or obtain a waiver of service from the defendant.

This case has now been referred to the undersigned United States magistrate judge for pretrial management under 28 U.S.C. § 636(b) and a standing order of reference from United States District Judge Sam A. Lindsay. *See* Dkt. No. 25.

Of the five named defendants, only Mepco has appeared, through a motion to dismiss it filed on September 26, 2023. *See* Dkt. No. 21. Forteza failed to respond to the motion, as ordered by the Court. *See* Dkt. Nos. 22 & 24.

Forteza also failed to respond to the Court's December 11, 2023 status order,

which provided in part:

> [W]hile this case was filed more than seven months ago, of the five named defendants, only one has appeared – [Mepco].
>
> Prior to the transfer of this case, the Court ordered as to three defendants – JCHW, Inc., Vehicle Service Department, and James Blakely – that Forteza must "file a valid return of service or show good cause in writing why service cannot be made on these defendants. If the plaintiff fails to comply with this order, dismissal of this case as to these three defendants will be recommended without further notice." Dkt. No. 13 (citing FED. R. CIV. P. 4(m)).
>
> Forteza responded to the order to indicate that, of these three, JCHW and Vehicle Service Department had been served and to request that the Court authorize substituted service as to Blakely. *See* Dkt. No. 16.
>
> The Court authorized substitute service. *See* Dkt. No. 17. And a summons return as to Blakely was filed on September 1, 2023. *See* Dkt. No. 19.
>
> As to the fourth defendant that has not appeared in this action – Matrix Financial Services, LLC – Forteza filed a summons return on April 26, 2023. *See* Dkt. No. 5.
>
> These defendants' failures to respond so far may implicate Local Civil Rule 55.1, which provides that, "[i]f a defendant has been in default for 90 days, the presiding judge may require the plaintiff to move for entry of a default and a default judgment. If the plaintiff fails to do so within the prescribed time, the presiding judge will dismiss the action, without prejudice, as to that defendant." N.D. TEX. L. CIV. R. 55.1.
>
> The Court therefore ORDERS that, by **January 12, 2024**, Forteza must as to each defendant other than Mepco either (1) file a status report advising the Court if Forteza does not believe that the defendant is in default after having been properly served with process in this case or (2) seek entry of default as to that defendant and file a properly-supported motion for default judgment against that defendant.
>
> And Forteza is CAUTIONED that failure to timely comply with this order could lead to the dismissal of the claims against the non-appearing defendants. *See* FED. R. CIV. P. 41(b); N.D. TEX. L. CIV. R. 55.1.

Dkt. No. 27. It is now more than four months past Forteza's deadline to respond. And

she otherwise has not contacted the Court or made other efforts to prosecute this case.

The undersigned therefore enters these findings of fact, conclusions of law, and recommendation that the Court should grant Mepco's motion to dismiss and dismiss this lawsuit without prejudice under Federal Rules of Civil Procedure 12(b)(6) and 41(b) and Northern District of Texas Local Civil Rule 55.1.

**Legal Standards**

In deciding a motion to dismiss for failure to state a claim on which relief may be granted under Rule 12(b)(6), the Court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205-06 (5th Cir. 2007). Even so, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and must plead those facts with enough specificity "to raise a right to relief above the speculative level," *id.* at 555.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* So, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (cleaned up; quoting

*Twombly*, 550 U.S. at 557).

Accordingly, Federal Rule of Civil Procedure 8(a)(2) does not mandate detailed factual allegations, but it does require that a plaintiff allege more than labels and conclusions. And, while a court must accept a plaintiff's factual allegations as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

Consequently, a threadbare or formulaic recitation of the elements of a cause of action, supported by mere conclusory statements, will not suffice. *See id.*; *Armstrong v. Ashley*, 60 F.4th 262, 269 (5th Cir. 2023) ("[T]he court does not 'presume true a number of categories of statements, including legal conclusions; mere labels; threadbare recitals of the elements of a cause of action; conclusory statements; and naked assertions devoid of further factual enhancement.'" (quoting *Harmon v. City of Arlington, Tex.*, 16 F.4th 1159, 1162-63 (5th Cir. 2021))).

In sum, "to survive a motion to dismiss" under *Twombly* and *Iqbal*, plaintiffs must "plead facts sufficient to show" that the claims asserted have "substantive plausibility" by stating "simply, concisely, and directly events" that they contend entitle them to relief. *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 12 (2014) (per curiam) (citing FED. R. CIV. P. 8(a)(2)-(3), (d)(1), (e)).

And, while "*[p]ro se* complaints receive a 'liberal construction,'" "mere conclusory allegations on a critical issue are insufficient." *Brown v. Tarrant Cnty.*,

*Tex.*, 985 F.3d 489, 494 (5th Cir. 2021) (cleaned up).

That said, Federal Rule of Civil Procedure 15 requires that leave to amend be granted freely "when justice so requires." FED. R. CIV. P. 15(a)(2). And, because this rule provides a "strong presumption in favor of granting leave to amend," *Fin. Acquisition Partners, LP v. Blackwell*, 440 F.3d 278, 291 (5th Cir. 2006), the Court must do so "unless there is a substantial reason to deny leave to amend," *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 598 (5th Cir. Nov. 1981).

One such reason could be a failure to prosecute or comply with applicable rules and orders. And Rule 41(b) "authorizes the district court to dismiss an action *sua sponte* for failure to prosecute or comply with [a Federal Rule of Civil Procedure or] a court order." *Griggs v. S.G.E. Mgmt., L.L.C.*, 905 F.3d 835, 844 (5th Cir. 2018) (citing *McCullough v. Lynaugh*, 835 F.2d 1126, 1127 (5th Cir. 1988) (per curiam)); *accord Nottingham v. Warden, Bill Clements Unit*, 837 F.3d 438, 440 (5th Cir. 2016) (failure to comply with a court order); *Rosin v. Thaler*, 450 F. App'x 383, 383-84 (5th Cir. 2011) (per curiam) (failure to prosecute); *see also Campbell v. Wilkinson*, 988 F.3d 798, 800-01 (5th Cir. 2021) (holding that the text of Rule 41(b) does not extend to a failure to comply with a court's local rule insofar as that violation does not also qualify as a failure to prosecute (discussing *Berry v. CIGNA/RSI-CIGNA*, 975 F.2d 1188 (5th Cir. 1992))).

This authority "flows from the court's inherent power to control its docket and

prevent undue delays in the disposition of pending cases." *Boudwin v. Graystone Ins. Co., Ltd.*, 756 F.2d 399, 401 (5th Cir. 1985) (citing *Link v. Wabash R.R. Co.*, 370 U.S. 626 (1962)); *see also Lopez v. Ark. Cnty. Indep. Sch. Dist.*, 570 F.2d 541, 544 (5th Cir. 1978) ("Although [Rule 41(b)] is phrased in terms of dismissal on the motion of the defendant, it is clear that the power is inherent in the court and may be exercised sua sponte whenever necessary to 'achieve the orderly and expeditious disposition of cases.'" (quoting *Link*, 370 U.S. at 631)); *Campbell*, 988 F.3d at 800 ("It is well established that Rule 41(b) permits dismissal not only on motion of the defendant, but also on the court's own motion." (citing *Morris v. Ocean Sys., Inc.*, 730 F.2d 248, 251 (5th Cir. 1984) (citing, in turn, *Link*, 370 U.S. at 631))).

And the Court's authority under Rule 41(b) is not diluted by a party proceeding *pro se*, as "[t]he right of self-representation does not exempt a party from compliance with relevant rules of procedural and substantive law." *Wright v. LBA Hospitality*, 754 F. App'x 298, 300 (5th Cir. 2019) (per curiam) (quoting *Hulsey v. Texas*, 929 F.2d 168, 171 (5th Cir. 1991) (quoting, in turn, *Birl v. Estelle*, 660 F.2d 592, 593 (5th Cir. Nov. 1981))).

A Rule 41(b) dismissal may be with or without prejudice. *See Long v. Simmons*, 77 F.3d 878, 879-80 (5th Cir. 1996).

> Although "[l]esser sanctions such as fines or dismissal without prejudice are usually appropriate before dismissing with prejudice, ... a Rule 41(b) dismissal is appropriate where there is 'a clear record of delay or contumacious conduct by the plaintiff and when lesser sanctions would

not serve the best interests of justice.'"

*Nottingham*, 837 F.3d at 441 (quoting *Bryson v. United States*, 553 F.3d 402, 403 (5th Cir. 2008) (per curiam) (in turn quoting *Callip v. Harris Cnty. Child Welfare Dep't*, 757 F.2d 1513, 1521 (5th Cir. 1985))); *see also Long*, 77 F.3d at 880 (a dismissal with prejudice is appropriate only if the failure to comply with the court order was the result of purposeful delay or contumacious conduct and the imposition of lesser sanctions would be futile); *cf. Nottingham*, 837 F.3d at 442 (noting that "lesser sanctions" may "'include assessments of fines, costs, or damages against the plaintiff, conditional dismissal, dismissal without prejudice, and explicit warnings'" (quoting *Thrasher v. City of Amarillo*, 709 F.3d 509, 514 (5th Cir. 2013))).

"When a dismissal is without prejudice but 'the applicable statute of limitations probably bars future litigation,'" that dismissal operates as – i.e., it is reviewed as – "a dismissal with prejudice." *Griggs*, 905 F.3d at 844 (quoting *Nottingham*, 837 F.3d at 441); *see, e.g., Wright*, 754 F. App'x at 300 (affirming dismissal under Rule 41(b) – potentially effectively with prejudice – where "[t]he district court had warned Wright of the consequences and 'allowed [her] a second chance at obtaining service'" but she "disregarded that clear and reasonable order").

### Analysis

Forteza alleges that she "received 4 calls between October 5, 2022 and October 27, 2022 to her personal cell phone number" that were made "without her prior

express written consent and not related to an emergency purpose, selling extended car warranty services from the Defendants." Dkt. No. 3 at 8. Forteza then identifies those calls only by their date and time and the number initiating the call. *See id.* at 16. Forteza also alleges that "[a]ll 4 calls were initiated by an automatic telephone dialing as indicated by a 3-4 second delay of dead air when the call first connected." *Id.* at 8.

But, except for one of the calls, Forteza alleges no further details – for example, which defendant called her or what was said, such that the Court could infer which defendant made – or, possibly, authorized an agent to make – the call.

As to the one outlier, Foretza alleges that,

> [o]n October 27, 2022, Plaintiff received a call from the Defendant Vehicle Service Department selling extended car warranty. To confirm solicitation, the Defendant sent the Plaintiff the contract, Element Enhance Powertrain Vehicle Service Contract. The contract was from Vehicle Service Department, who is the Selling Company. The contract also shows Defendant Matrix Financial Services, LLC as the Provider/Administrator/Obligor of the Contract. [Mepco] is the Finance Company or the Payment Plan Provider.

*Id.* at 8; *see also id.* at 18-27 (the alleged service contract attached as an exhibit to the complaint).

Based on facts set out above, Forteza first alleges that all defendants violated 47 U.S.C. § 227(b)(1)(A)(iii).

> Section 227(b) of the TCPA makes it unlawful for any person to "make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic

>    telephone dialing system or an artificial or prerecorded voice to any telephone number assigned to a cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii). A violation of § 227(b)(1)(A)(iii) occurs if: "(1) the defendant called a cellular telephone number; (2) using an automatic telephone dialing system or an artificial or prerecorded voice; (3) without the recipient's prior express consent." *Cunningham v. Nationwide Sec. Sols., Inc.*, No. 3:17-cv-337-M, 2017 WL 10486988, at *2 (N.D. Tex. Nov. 2, 2017) (quoting *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012)).

*Hunsinger v. Alpha Cash Buyers, LLC*, No. 3:21-cv-1598-D, 2021 WL 5040228, at *3 (N.D. Tex. Oct. 29, 2021) (cleaned up); *see also Forteza v. Pelican Inv. Holdings Grp.*, No. 4:23-cv-401-ALM-KPJ, 2023 WL 9199001, at *3 n.2 (E.D. Tex. Dec. 27, 2023) (§ 227(b) violations "do not require [National Do Not Call] Registry [("DNC")] membership"), *rec. adopted*, 2024 WL 128206 (E.D. Tex. Jan. 11, 2024).

As to the required use of an automatic telephone dialing system ("ATDS"),

>    [t]he TCPA defines an ATDS as "equipment which has the capacity – (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1). [And] the Supreme Court resolved a circuit split "regarding whether an autodialer must have the capacity to generate random or sequential phone numbers," or whether an ATDS "need only have the capacity to store numbers to be called and to dial such numbers automatically." *Facebook, Inc. v. Duguid*, 592 U.S. 395, 401 (2021) (internal quotations omitted). The Court held that, "[t]o qualify as an 'automatic telephone dialing system,' a device must have the capacity either to store a telephone number using a random or sequential generator or to produce a telephone number using a random or sequential number generator." *Id.* at 399. Thus to establish a claim under § 227(b), "the equipment in question must use a random or sequential number generator," not merely auto-dial stored numbers. *Id.* at 404.

*Id.* (citations modified).

Courts "have noted the difficulty a plaintiff faces in knowing the type of calling system used without the benefit of discovery and found that [they] can rely on details about the call to infer the use of an ATDS." *Horton v. Nat'l Republican Senatorial Comm.*, No. 3:22-cv-1000-G-BK, 2023 WL 372066, at *4 (N.D. Tex. Jan. 23, 2023) (quoting *Cunningham v. Nationwide Sec. Sols., Inc.*, No. 3:17-cv-337-M, 2017 WL 10486988, at *3 (N.D. Tex. Nov. 2, 2017)). "To that end, courts in this circuit have held that a plaintiff can survive a motion to dismiss by pleading different facts in his complaint that implicitly illustrate the necessary TCPA elements." *Id.* (collecting cases). "Even so, the plaintiff must still plead sufficient facts illustrating the TCPA elements." *Id.* (citation omitted).

So far, Forteza has not done so. Like the allegations found deficient in *Cunningham v. TechStorm, LLC*, No. 3:16-cv-2879-M, 2017 WL 721079 (N.D. Tex. Feb. 23, 2017), Forteza's complaint, for the most part, "contains only vague generalizations." *Id.* at *2. For example, where Forteza has sued five different defendants based on some four identified calls, pleading – as to three of the calls – only the time, date, and phone number associated with the call is inadequate to connect a particular defendant to the misconduct alleged.

Moreover, after *Duguid*, alleging dead air when a phone call connects – without further facts that could show the use of ATDS – may not be enough to plausibly plead that "'the equipment in question [used] a random or sequential number generator,'

not merely auto-dial stored numbers." *Hunsinger*, 2021 WL 5040228, at *3 (quoting *Duguid*, 592 U.S. at 404); *see, e.g.*, *Perez v. Quicken Loans, Inc.*, No. 19-cv-2072, 2020 WL 1491145, at *2 (N.D. Ill. Mar. 27, 2020) ("The Court agrees with Defendant that Plaintiff's allegations are too thin to support an inference that Defendant used an ATDS to make the calls about which Plaintiff complains" where, "focusing on the second element in particular, Defendant insists that the allegation of a 'pause' does not support the inference that an ATDS was used to make the calls in question, for 'at least some predictive [dialers] ... have no capacity to generate random or sequential numbers.' Defendant further points out that the nature and frequency of the calls does not support an inference of ATDS use, since calls can be made frequently with rotary or push-button phones, too. Thus, the ability to call many numbers quickly does not hinge on the equipment's capacity for 'generating [random or sequential] numbers and then dialing them.' Finally, Defendant insists that multiple calls in one day may indicate an effort to target Plaintiff, rather than to randomly or sequentially contact her." (quoting *ACA Int'l v. FCC*, 885 F.3d 687, 703, 702-03 (D.C. Cir. 2018))); *see also id.* at *3 ("Plaintiff should take care to include in her second amended complaint more robust allegations about the extent and timing of her interactions with Defendant's representatives, as those details may inform whether she has sufficiently alleged the use of an ATDS. While it is true, as many courts have observed, that a plaintiff should not be required to plead specific facts as

to the technical specifications of the type of call system employed by the defendant, it also cannot be the case that every barebones TCPA claim can survive a motion to dismiss by alleging unwanted calls and a short period of dead air when the call is answered. And it is not too much to ask that a plaintiff who was so frustrated over persistent calls from the same number to have contacted a lawyer actually recall and set down in a pleading the details of the interactions that led her to bring a federal case.").

> Turning to Forteza's second alleged violation of federal law,
>
> Section 227(c)(1) authorizes the Federal Communications Commission ("FCC") to promulgate regulations on telephone solicitations. *See* 47 U.S.C. § 227(c)(1) ("[T]he Commission shall initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object."). Based on this authorization, "the FCC issued regulations prohibiting 'person[s] or entit[ies] [from] initiat[ing] any call for telemarketing purposes to a residential telephone subscriber unless [the] person or entity has instituted [certain listed] procedures for maintaining' a do-not-call list." *Charvat v. NMP, LLC*, 656 F.3d 440, 443-44 (6th Cir. 2011) (alterations in original) (quoting 47 C.F.R. § 64.1200(d)). If a person or entity violates these delivery restrictions, § 227(c)(5) grants a right of private action to "[a] person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection."

*Hunsinger v. Alpha Cash Buyers, LLC*, No. 3:21-cv-1598-D, 2022 WL 562761, at *2 (N.D. Tex. Feb. 24, 2022); *see also Powers v. One Techs., LLC*, No. 3:21-cv-2091, 2022 WL 2992881, at *2 (N.D. Tex. July 28, 2022) (finding "that § 64.1200(d) was issued to further the privacy right in § 227(c)," so "the private right of action contained in §

227(c) reaches violations of § 64.1200(d)" (footnote omitted)).

"The regulation relates to a marketer's duty to prepare internal policies to receive and implement affirmative requests not to receive calls," so, where a plaintiff fails to "allege that he made any such affirmative request," he generally fails to allege "how the provision was violated." *Bailey v. Domino's Pizza, LLC*, 867 F. Supp. 2d 835, 842 (E.D. La. 2012) (granting motion to dismiss where a complaint "simply recite[d] the requirements of 47 C.F.R. § 64.1200(d) and conclusorily allege[d] that they were violated"); *cf. John v. Keller Williams Realty, Inc.*, No. 6:19-cv-1347-Orl-40DCI, 2020 WL 10502631, at *5 (M.D. Fla. Feb. 4, 2020) ("The regulations in § 61.1200(d) are not directly concerned with the *national* do-not-call list, but the requirement that companies maintain *internal* do-not-call lists." (emphasis in original)).

Forteza alleges that all defendant violated § 64.1200(d) where her cellular phone serves as a residential telephone, *see* Dkt. No. 3 at 9; she registered for the DNC on October 3, 2022, *see* Dkt. No. 3 at 6-7; and she received calls after this date, *see id.* at 8-9 & 16.

But, particularly where she does not also allege that she requested that she be added to a defendant's internal do-not-call list, Forteza offers no other allegations from which the Court may at least infer that the defendants failed to institute required procedures for maintaining a do-not-call list.

That is, Forteza fails to plead sufficient facts to allege that a particular

defendant violated Section 64.1200(d), even accepting that Section 64.1200(d) applies to cellular phones for the limited purpose of ruling on the motions to dismiss. *See, e.g.*, *Hunsinger*, 2022 WL 562761, at *2 & n.3 (recognizing "a split among district courts over whether cellular telephone owners, as a matter of law, can be residential telephone subscribers" and noting that, "[a]lthough the court now holds that [the plaintiff] can qualify as a residential telephone subscriber within the meaning of 47 C.F.R. §§ 64.1200(c) and (d) because he pleads that he received telephone calls and text messages on a cellular telephone that was used for residential purposes, the court may reconsider this conclusion at a later stage in this court if developments in the law so warrant").

First, as noted above – and, again, considering that Forteza has sued five separate defendants – the allegations in the complaint are only more than conclusory as to one call: the one on October 27, 2022.

And to allege a plausible violation of Section 64.1200(d) requires more than one call. *See, e.g.*, *Slominski v. Globe Life, Inc.*, No. 7:23-CV-1081-D, 2024 WL 556978, at *8 (E.D.N.C. Feb. 12, 2024) ("Slominski plausibly alleges just one call from United after she asked to be placed on an internal do-not-call list. Accordingly, the court grants defendants' motion to dismiss [this] claim." (citations omitted)).

Further, the complaint lacks allegations to reflect that Forteza requested to be placed on a do-not-call list maintained internally by a defendant or allegations that

could otherwise show that a defendant failed to institute required procedures for maintaining a do-not-call list. *See, e.g.*, *id.* ("Slominski must plausibly allege United called her at least twice in a year and these calls indicate United 'did not implement the procedures outlined in 47 C.F.R. § 64.1200(d), including maintaining an internal do-not-call list.' When a callee asks to be put on an internal do-not-call list, a caller 'must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made,' not to exceed '30 days from the date of such request.'" (quoting *Fischman v. MediaStratX, LLC*, No. 2:20-CV-83, 2021 WL 3559639, at *6 (E.D.N.C. Aug. 10, 2021), then 47 C.F.R. § 64.1200(d)(3))).

Forteza also has not alleged violations of the Texas Business and Commerce Code (her third and fourth claims).

First, to the extent that Forteza alleges a claim against Mepco under Section 302.101, the operative complaint lacks sufficient allegations of fact to show that Mepco "effected or attempted to effect [any of the alleged] calls [that Forteza] received." *Salaiz v. Beyond Fin., LLC*, No. EP-23-CV-6-KC, 2023 WL 6053742, at *5 (W.D. Tex. Sept. 18, 2023) ("Pursuant to this plain language – and mindful that the Code should 'be liberally construed and applied to promote its underlying purpose to protect persons,' TEX. BUS. & COM. CODE § 302.003 – the Court finds Plaintiff has plausibly alleged that Defendant effected or attempted to effect the thirteen calls Plaintiff received by hiring telemarketers to make those calls." (citations omitted)).

And Forteza's Section 305.053 claim fails for the same reasons that her claims under the TCPA fail. *See Pinn v. CycleBar Franchising, LLC*, No. 3:23-cv-1540-M, 2023 WL 8374749, at *2 (N.D. Tex. Dec. 4, 2023) ("'The Texas TCPA [referring to TBCC § 305.053] proscribes only that conduct which is also prohibited by the TCPA. If no violation of the TCPA exists, there is no violation of the Texas TCPA.' It is axiomatic that if no violation of the TCPA exists, then there is no violation of TBCC § 305.053; in other words, the two are coextensive." (quoting *Cherkaoui v. Santander Consumer USA, Inc.*, 32 F. Supp. 3d 811, 815 (S.D. Tex. 2014); collecting cases)).

The Court should therefore grant Mepco's motion to dismiss.

The Court should also dismiss this lawsuit under Rule 41(b).

Forteza's failure to comply with the Court's December 11 order **at all** warrants dismissal under Rule 41(b) without prejudice. Because the undersigned concludes that lesser sanctions would be futile, as the Court is not required to delay the disposition of this case until such time as Forteza decides to obey the Court's orders or otherwise properly effect service or choose to comply with Local Civil Rule 55.1, the Court should exercise its inherent power to prevent undue delays in the disposition of pending cases and *sua sponte* dismiss this action without prejudice under Rule 41(b).

It is not apparent based on the record here whether dismissal of this lawsuit without prejudice at this stage would effectively be a dismissal with prejudice – for

example, because a statute of limitations would prevent Forteza's refiling these claims.

But, insofar as this dismissal may somehow prejudice Forteza, these findings, conclusions, and recommendation afford notice, and the opportunity to file objections (as further explained below) affords an opportunity to respond, to explain why this case should not be dismissed for the reasons set out above – and show why leave to amend the complaint should be granted. *See Carver v. Atwood*, 18 F.4th 494, 498 (5th Cir. 2021) ("The broad rule is that 'a district court may dismiss a claim on its own motion as long as the procedure employed is fair.' More specifically, 'fairness in this context requires both notice of the court's intention and an opportunity to respond' before dismissing *sua sponte* with prejudice." (citations omitted)); *Scott v. U.S. Bank Nat'l Ass'n*, 16 F.4th 1204, 1209 (5th Cir. 2021) (per curiam) ("A court should freely give leave to amend when justice so requires, but a movant must give the court at least some notice of what his or her amendments would be and how those amendments would cure the initial complaint's defects. If the plaintiff does not provide a copy of the amended complaint nor explain how the defects could be cured, a district court may deny leave." (citations omitted)). *Cf. Martinez v. Nueces Cnty.*, 71 F.4th 385, 391 (5th Cir. 2023) ("If the complaint, as amended, would be subject to dismissal, then amendment is futile and the district court [is] within its discretion to deny leave to amend." (citation omitted)).

## Recommendation

The Court should grant the motion to dismiss [Dkt. No. 21] and dismiss this lawsuit without prejudice under Federal Rules of Civil Procedure 12(b)(6) and 41(b) and Northern District of Texas Local Civil Rule 55.1.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: April 22, 2024

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE